```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

**SADIE MICHELE BLANCHARD ET AL**                            **CIVIL ACTION**

**VERSUS**                                                   **NO. 20-2400**

**JEFFREY SCOTT TILLMAN ET AL**                              **SECTION "B"(5)**

ORDER AND REASONS

Before the Court is defendant Jeffrey Tillman's motion to dismiss for lack of personal jurisdiction (Rec. Doc. 10), plaintiff Sadie Michele Blanchard's response in opposition (Rec. Doc. 13), and defendant's reply (Rec. Doc. 20). For the reasons discussed below,

**IT IS ORDERED** that the motion to dismiss for lack of personal jurisdiction IS **DENIED**.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This suit arises out of an October 2019 state election. Rec. Doc. 13 at 2. In October 2019, plaintiff Sadie Michele Blanchard was a candidate for the Louisiana House of Representatives District 76 race. Rec. Doc. 1-1 at 2. During her candidacy, defendant Jeffrey Tillman was an employee of U.S. Term Limits as its Deputy Field Director. Rec. Doc. 9-1 at 2. During the election, Tillman allegedly solicited information through a private email account from plaintiff, seeking information regarding her thoughts on congressional term limits. *Id.* Plaintiff's complaint shows that Tillman emailed Blanchard three times. Rec. Doc. 1 at 4-6.

Plaintiff states that Blanchard responded to his email on August 20, 2019. *Id.* Her response was that she had "no objection to term limits for Congress or any other elected office." *Id.* Tillman emailed her two more times. *Id.* at 4.

According to plaintiff, U.S. Term Limits used her response to launch a negative social media campaign two weeks prior to the election. Rec. Doc. 13 at 2. U.S. Term Limits "caused four attack mailers to be mailed that contained many false statements." *Id.* As a result, plaintiff filed a Petition for Damages and Fines pursuant to La. R.S. 18:1463 and La. Civ. Code art. 2998 in the 22nd Judicial State Court for the Parish of St. Tammany, State of Louisiana. Rec. Doc. 9-1 at 2. The petition contains three claims which are (1) election law violations with a request for penalties; (2) defamation with request for damages; and (3) enrichment without cause under La. Civ. Code Ann. Art. 2298. Rec. Doc. 13 at 2. On September 1, 2020, defendants removed the state action to federal court on the grounds of complete diversity and damages in excess of $75,000. Rec. Doc. 1 at 2.

Then, on October 6, 2020, Tillman filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Rec. Doc. 10-1 at 1. Defendant is a resident of Michigan. *Id.* at 2. Additionally, he does not own property in Louisiana. *Id.* He has never resided in Louisiana and only visited the state once for a convention. Rec. Doc. 10-2 at 2. Tillman claims to have not caused

2

plaintiff direct harm besides exchanging emails with her. *Id.* Although Tillman admits to communicating by emails and phone calls to elected officials and candidates for office in Louisiana, he disputes any involvement in "produc[ing], generat[ing], or transmit[ting] the mailers." *Id.;* Rec. Doc. 20 at 1.

**A. Whether the defendant had minimum contacts with the state**

Before a defendant must answer to a court "with which he has established no meaningful contacts, ties, or relations," the Due Process Clause requires a "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). The Due Process Clause's "fair warning" requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 472 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"The minimum contacts prong of the due process analysis may be satisfied if the contacts give rise to specific personal jurisdiction or give rise to general personal jurisdiction." *Planet Beach Franchising Corp. v. C3Ubit, Inc.*, 2002 WL 1870007 at *2 (E.D. La. Aug. 12, 2002)(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, (1984)). A defendant's minimum contacts must demonstrate that his "conduct and connection

3

with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. However, reasonable anticipation is tempered by the "purposeful availment" requirement, which "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475.

    i.    <u>Specific Jurisdiction</u>[1]

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum. . .and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472. Accordingly, when the suit is related to or arises out of the defendant's alleged contacts with the forum state, "the minimum-

---

[1] Plaintiff's opposition appears to be mainly based on this Court exercising specific jurisdiction, alleging that defendant's contacts with the forum gave rise to the instant cause of action. Nevertheless, plaintiff believes that defendants have systematic and continuous contacts in Louisiana through solicitation of candidates and elected officials' support, signatures for their pledge, and voter donations. Thus, plaintiff maintains that jurisdictional discovery is needed to verify this belief. Rec. Doc. 13 at 19.

Defendant objects to jurisdictional discovery by alleging that it may only serve "to open up a fishing expedition for Plaintiffs." Rec. Doc. 20 at 5. Because we believe that the case subjects Tillman to specific jurisdiction, a general jurisdiction analysis and limited discovery is not necessary.

4

contacts inquiry focuses on the relationship among the defendant, the forum and the litigation." *See Helicopteros Nacionales*, 466 U.S. at 415. "A single act by the defendant directed at the forum state can be enough to confer in personam jurisdiction over him, if the cause of action arises out of that act." *Jackson v. Lotte Chemical Louisiana LLC*, No. 2:20-cv-00676, 2020 WL 6220160, at *1 (W.D.La. Oct. 22, 2020)(citing *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 419 (5th Cir. 1993); *Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 332-34 (5th Cir. 1982)(holding that a telephone call to the forum state was sufficient for satisfying personal jurisdiction).

a. *Whether Tillman conducted business in Louisiana*

Tillman argues that he is not subject to personal jurisdiction in the forum because he "did not purposefully avail himself to the privileges of conducting business in Louisiana." Rec. Doc. 10-1 at 9. In objecting to any purposeful availment in the state, Tillman cites to *Stuart v. Spademan*, wherein the Fifth Circuit affirmed a district court's dismissal of a defendant for lack of personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985).

In *Spademan*, the plaintiff asserted that the court could exercise specific jurisdiction over the defendant in the state of Texas because of his various activities within the forum, such as the execution of the contract in dispute and various written and oral correspondence and transactions between the parties. *Id.* at

5

1189. The court affirmed the lower court's decision to dismiss for lack of personal jurisdiction because the parties "did not contemplate a long-term relationship" involving "long-term obligations and wide-reaching contacts." *Id.* at 1194. Tillman relies on *Spademan* to suggest that not even a defendant with arguably greater contacts with a forum can be subject to personal jurisdiction if those contacts do not contemplate a long-term relationship with the forum. Rec. Doc. 10-1 at 10.

Specific jurisdiction does not depend on whether there be any contact at all with a resident in the forum but rather the nature of that contact. The *Spademan* Court emphasized that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws." *Spademan*, 772 F.2d at 1193. However, *Spademan* and the instant dispute share little, if any, factual similarities. The plaintiff therein unilaterally initiated contact with the defendant and judging by the nature of the parties' infrequent correspondence regarding their contract, the defendants did not contemplate a long-term business relationship with the forum. *Id.* at 1194. Here, it was Tillman who attempted to contact Blanchard about her position through email and phone calls until Blanchard eventually responded to one of Tillman's emails. Thus, as the Fifth Circuit directed in *Spademan*, we must look to the

6

nature of Tillman's contacts – namely his emails with Blanchard – to determine whether he contemplated an ongoing business relationship in the state.

Tillman principally relies on the Louisiana Second Circuit's decision in *Devillier*, involving a Louisiana plaintiff who sued a Tennessee-based insurance agent for failing to inform him of a policy limit. *Devillier v. Farmers Insurance Exchange*, 49,562 (La. App. 2 Cir. 1/14/15), 161 So.3d 993, 994-95. The plaintiff therein argued that the insurance agent's emails to the plaintiff while the latter was temporarily relocated in Louisiana was sufficient to confer personal jurisdiction over the agent. *Id.* at 996. The appellate court disagreed and held that the emails were insufficient to subject the agent to personal jurisdiction because the suit arose "out of alleged acts and omissions committed by [the agent] in Tennessee." *Id.* at 997. Tillman suggests that this holding stands for the proposition that a non-resident defendant's minimum contacts in the state cannot be established solely through an exchange of emails with a party within that state. Rec. Doc. 10-1 at 6.

In *Internet Doorway*, the district court found that personal jurisdiction was satisfied under the Mississippi long-arm statute's "doing business" prong based on emails sent by the Texas defendant. *Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773, 775 (S.D.Miss. 2001). The district court reasoned:

7

> . . .[W]hen [the defendant] allegedly transmitted the email to a recipient or recipients in Mississippi, it was an attempt to solicit business for a particular website. Thus, [the defendant] committed a purposeful act that occurred in Mississippi, just as if she had sent via United State Mail a letter to a Mississippi resident advertising a particular product of service.

*Id.* at 776. Notably, the court found that "the active as opposed to passive nature of e-mail weighs in favor of finding personal jurisdiction." *Id.*

*Devillier*'s rationale indicates that the emails' subject matter is relevant for the purpose of specific jurisdiction. The Louisiana Second Circuit determined that the nature of the email communications was "too attenuated to serve as the basis for specific personal jurisdiction." *Id.* at 997. Thus, the Tennessee agent could not have reasonably foreseen being haled into court in Louisiana, given that the emails only pertained to matters within Tennessee. *Id.* Because *Devillier* is not analogous to the present case, we are not persuaded to apply its reasoning.

The instant dispute bears a greater factual similarity to *Internet Doorway* because Tillman sought to contact Blanchard in hopes of gaining her public support for U.S. Term Limits and their mission. Their emails pertained to her candidacy for state office in Louisiana and how Louisiana voters may respond to her position on congressional term limits. Because their exchange related to Louisiana politics, the nature of their emails are not so attenuated that Tillman could not have reasonably foreseen being

8

haled into Louisiana. Moreover, because La. Rev. Stat. § 13:3201(A) advises us to construe "doing business" broadly, Tillman's deliberate solicitation of Blanchard's support for his organization reasonably falls under this prong of the long-arm statute.

b. *Whether Tillman committed a tortious act in Louisiana*

Relative to jurisdiction over non-residents in intentional tort suits, *Calder* requires courts to analyze the effects of the alleged tort in the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984). In *Calder*, the plaintiff, who was an actress residing in the forum, filed suit in California against a Florida reporter for writing a libelous story on her that was widely circulated in the forum state. *Id.* at 785. The Court found jurisdiction proper over the reporter because "his actions were expressly aimed at California" by writing an article he knew would cause a "potentially devastating impact" on the plaintiff in the forum state where she lived and worked. *Id.* at 789-90.

The Fifth Circuit later modified the *Calder* effects test in *Revell v. Lidov* to add a requirement that the defendant must have knowledge of the forum at which his alleged conduct is directed. 317 F.3d 467, 475 (5th Cir. 2002)("Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test."). In *Revell,* the plaintiff sued the Massachusetts defendant in a Texas court for

writing a defamatory article accusing the former of conspiring with the Reagan Administration. *Id.* at 469. However, the defendant was unaware that the plaintiff resided in Texas at the time he wrote the article on an online forum maintained by Columbia University. *Id.* The court found that a Texas court could not exercise personal jurisdiction, in part, because the article made no reference to Texas or the plaintiff's Texas activities nor was it directed at Texas readers. *Id.* at 473. The court stated, "defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum, as *Calder* itself and numerous cases from other circuits applying *Calder* confirm." *Id.* at 475.[2]

Plaintiff argues that Tillman's deliberate actions to contact her in furtherance of his business ultimately caused injury to her reputation and cost her an election, which may be grounds for personal jurisdiction under the long-arm statute. Rec. Doc. 13 at 6; Rec. Doc. 1-1 at 5. Tillman informed Blanchard in his email:

> Our effort is for the folks in Washington DC[.] The bureaucrats as well as [l]obbyist [sic] have an extreme level of control already and the longer an official is there the more cozy they become. . .We surely need open seats to give more citizens a chance to step up and fix

---

[2] The Fifth Circuit also noted, "Demanding knowledge of a particular forum to which conduct is directed, in defamation cases, is not altogether distinct from the requirement that the forum be the focal point of the tortious activity because satisfaction of the latter will ofttimes provide sufficient evidence of the former." *Id.* at 475-76.

10

>this. . .*We would love to let our supporters in Louisiana know you are with them. . ."*

Rec. Doc. 1-1 at 5 (emphasis added). Once the defendant initiated contact with plaintiff, he clearly indicated what his and U.S. Term limits' efforts were in doing so - to discuss Blanchard's position on congressional term limits and its potential impact on their local supporters.

Although Tillman attests that he did not create nor disseminate the mailers, executive director Nick Tomboulides stated that U.S. Term Limits knew they had supporters in St. Tammany Parish and it was Tillman's responsibility as deputy field director to contact Blanchard. Rec. Doc. 11-2 at 1-2. In that email, Tillman informed Blanchard that they had supporters within the state, who would want to know that she is "with them." Rec. Doc. 1-1 at 5. After Blanchard refused to sign the term limits pledge to "voice her support", Tomboulides further revealed in his affidavit, "In connection with Mr. Tillman's emails with Ms. Blanchard, U.S. Term Limits' committee directed that the mailers in question be designed and sent to Louisiana." Rec. Doc. 11-2 at 2.

Upon applying the *Calder* effects test, Tillman's activities reflected an intentional and orchestrated effort by the defendants to contact Blanchard, gain her support for their cause, and impact the local election in some manner depending on her response.

Defendants here knew they had support in St. Tammany Parish, and as deputy field director, Tillman reached out to Blanchard, a candidate for state office, and asked her to pledge her support for term limits or risk forfeiting votes from their local supporters. Moreover, Tomboulides' affidavit confirms that Tillman and Blanchard's emails prompted U.S. Term Limits to create the attack mailers. Not only does this display a collective plan by the defendants that was noticeably missing in *Belin* but also illustrates Tillman's knowledge of the forum at the time he contacted Blanchard, which ultimately provoked the dissemination of the mailers, as required by *Revell.* As such, Blanchard alleges the mailers costed her an opportunity to serve as a state representative and damaged her reputation in the state. Rec. Doc. 1-1 at 19. Thus, Tillman's activities, which ultimately gave rise to the instant suit, satisfy all requirements of the *Calder* test to the extent that he could have reasonably anticipated being haled into a Louisiana court. Therefore, plaintiff has shown that Tillman purposefully availed himself to the forum by establishing minimum contacts and is subject to specific personal jurisdiction.

### B. Whether personal jurisdiction over Tillman would offend due process

The Fifth Circuit described the importance of analyzing fairness in the jurisdiction inquiry because it "captures the reasonableness of hauling a defendant from his home state before

12

the court of a sister state." *Revell*, 317 F.3d at 476. "It is not fairness calibrated by the likelihood of success on the merits or relative fault. Rather, we look to the geographic focus of the article, not the bite of the defamation, the blackness of the calumny, or who provoked the fight." *Id.*

Based on above, Tillman should have reasonably anticipated being haled into court because his decision to contact Blanchard directly related to Louisiana voters, a state election, and her public support for U.S. Term Limits. Tillman was aware that if Blanchard did not publicly support congressional term limits, it could affect her electability among their local supporters. Thus, in that respect, personal jurisdiction over Tillman does not offend due process.

Tillman also argues that jurisdiction would impose a burden upon him, given that he "lives a thousand miles away" and has no other ties to the forum. Rec. Doc. 10-1 at 12. This argument alone does not move the Court to render jurisdiction unfair because traveling to this district to defend this suit will not be "especially onerous." *See Annie Sloan Interiors, Ltd. v. Davis Paint Co.*, No. 18-8431, 2019 WL 329580, at *4 (E.D.La. Jan. 25, 2019)(Lemmon, J.)(finding that personal jurisdiction would not offend due process because the defendant, as president of the defendant corporation, would likely be traveling to the forum in connection with the litigation anyway). Even if this Court elected

13

not to exercise personal jurisdiction over Tillman, it is likely that he would have been expected to travel to the forum anyway to serve as a witness. Therefore, Tillman's argument is without merit, and the Court finds that exercising personal jurisdiction over Tillman comports with the traditional notions of fair play and substantial justice.

New Orleans, Louisiana this 25th day of February 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE