**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

SADIE MICHELE BLANCHARD                          CIVIL ACTION
AND COMMITTEE TO ELECT
S. MICHELE BLANCHARD, LLC

VERSUS                                           NO. 20-2400

JEFFREY SCOTT TILLMAN
AND U.S. TERM LIMITS                             SECTION "B"(5)

<u>ORDER AND REASONS</u>

Before the Court are defendants Jeffrey Tillman and U.S. Term Limits' special motion to strike under Louisiana Code of Civil Procedure Article 971 or in the alternative motion to dismiss under Rule 12(b)(6) (Rec. Doc. 11), plaintiffs Sadie Michele Blanchard and Committee to Elect S. Michele Blanchard, LLC's response in opposition (Rec. Doc. 12), and defendant's reply (Rec. Doc. 17). For the reasons discussed below,

**IT IS ORDERED** that the special motion to strike (Rec. Doc. 11) is **GRANTED, DISMISSING WITH PREJUDICE** plaintiffs' claims against all defendants;

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction to decide defendants' motion for attorney's fees provided that the motion and supporting materials are filed within **<u>fourteen (14) days of this order and in accordance with Local Rules of the EDLA.</u>**

I.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This suit arises out of the October 2019 election. Rec. Doc. 13 at 2. In October 2019, plaintiff Sadie Michele Blanchard was a

candidate for the Louisiana House of Representatives District 76 race. Rec. Doc. 1-1 at 2. During her candidacy, Defendant Jeffrey Tillman was an employee of U.S. Term Limits as its Deputy Filed Director. Rec. Doc. 9-1 at 2. During the election, Tillman allegedly solicited information through a private email account from Blanchard, seeking information regarding her thoughts on congressional term limits. *Id.* Plaintiffs' complaint indicates that Tillman emailed Blanchard three times. Rec. Doc. 1-1 at 4-6. Blanchard states that she responded to Tillman's email on August 20, 2019. *Id.* Blanchard responded that she had "no objection to term limits for Congress or any other elected office, except the adverse effect of empowering bureaucrats who have no responsibility to answer to the people and who fail to understand the practical impact and implications that the regulations they administrate have on people." *Id.* at 4. Tillman emailed Blanchard twice thereafter sharing information on congressional term limits. *Id.* at 5-6. Blanchard responded to his second email by saying that she "does not pledge the people's vote in advance on this or any issue. I believe it is best to remain open minded on all issues until the moment of voting, however, I have no issue with giving my present or indication of how I would vote." *Id.* She responded to his third email saying that her "answer remains the same." *Id.* at 7.

According to plaintiffs, defendants used Blanchard's email answers to launch a negative social media campaign two weeks prior to the election. Rec. Doc. 13 at 2. Defendants "caused four attack mailers to be mailed that contained many false statements." [1] *Id.* The four mailers contained slogans that stated that Blanchard was against congressional term limits. Rec. Doc. 1-1 at 9-10. The first mailer stated that Blanchard should "stop opposing term limits!" *Id.* at 9. The second mailer urged people to call Blanchard and ask her why she opposes term limits. *Id.* at 10. The third mailer included statements that Blanchard does not care about congressional term limits. *Id.* at 13. The fourth mailer also included phrases that stated that Blanchard was against congressional term limits. *Id.* at 15.

As a result, plaintiffs filed a Petition for Damages and Fines pursuant to La. R.S. 18:1463 and La. Civ. Code art. 2998 in the 22nd Judicial State Court for the Parish of St. Tammany, State of Louisiana. Rec. Doc. 9-1 at 2. The petition contains three claims, including (1) election law violations with a request for penalties; (2) defamation with request for damages; and (3) enrichment without cause under La. Civ. Code Ann. Art. 2298. Rec. Doc. 13 at 2. On September 1, 2020, defendants removed the state action to federal

---

[1] There is conflicting evidence on whether Tillman was involved in creating and distributing the mailers. Tillman states that he was not involved in creating and sending the mailers. Rec. Doc. 11-1 at 3. He states that his only role was emailing Blanchard. *Id.* Blanchard contends that Tillman was involved in creating and sending the mailers. Rec. Doc. 1-1 at 2.

court on the grounds of complete diversity and damages exceeding $75,000. Rec. Doc. 1 at 2.

On October 9, 2020, defendants filed a motion to dismiss for failure to state a claim and motion to strike pursuant to Louisiana Code of Civil Procedure Article 971. Rec. Doc. 11. Defendants seek to protect their right to free speech. Rec. Doc. 11-1 at 1. Defendants also contend that plaintiffs have not alleged any cognizable damages and therefore their claims should be dismissed for failure to state a claim. *Id.*

On October 19, 2020, plaintiffs filed a response stating that they could show the probability of success on their claim because the mailers were published with actual malice. Rec. Doc. 12 at 1.

On October 26, 2020, defendants filed a reply arguing the absence of actual malice evidence. Rec. Doc. 17 at 4.

## II.  **LAW AND ANALYSIS**

### a. **Motion to Strike**

Louisiana Code of Civil Procedure Article 971 "is Louisiana's anti-SLAPP statute, which was enacted to protect the constitutional right of free speech and encourage continued participation in matters of public significance." *Hoffman v. Bailey*, 996 F. Supp. 2d 477, 487 (E.D.La.2014). The article states:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana

> Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

La. Code Civ. Pro. art. 971(A)(1). This article explains that an "act in furtherance" consists of "[a]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law," or "[a]ny written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." La. Code Civ. Pro. art. 971(F)(1)(b)(c).

"The defendant must establish that a cause of action against him arises from an act by him in furtherance of the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." *Hoffman*, 996 F. Supp. 2d at 488. "If the defendant makes this showing, the burden then shifts to the plaintiff to demonstrate a probability of success on his claim." *Id.*

The United States Supreme Court stated that "[t]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Schittone v. Stoma*, 17-1732, p.5 (La. App. 1st Cir. 5/2/18), 2018 WL 2078822, at *4 (citing *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989)). Additionally, the Louisiana Supreme

Court explained that speech concerning the public "relat[es] to any matter of political, social, or other concern to the community." *Shelton v. Pavon*, 17-0482, p.12 (La. 10/18/17), 236 So. 3d 1233, 1241 (holding that private disputes involving private parties is not a matter of public concern)(citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

The Louisiana First Circuit relied on jurisprudence from the United States Supreme Court, which "stated that whether speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Schittone*, 2018 WL 2078822 at *4 (citing *Connick*, 461 U.S. at 147-48). The First Circuit concluded that distributing campaign literature is an act in furtherance of the First Amendment right of free speech. *Lamz v. Wells*, 05-1497, p.6 (La. App. 1st Cir. 6/9/06), 938 So. 2d 792, 797; *Schittone*, 2018 WL 2078822 at *4 (holding that the defendant's radio and television advertisement about judicial candidate was in furtherance of their right to free speech).

Defendants argue that campaign mailers were made in furtherance of their right to free speech and pertained to a matter of public concern and interest, namely elections and a candidate's position on term limits. Rec. Doc. 11-1 at 10. By contrast, plaintiffs argue that congressional terms have little relevance in

the State of Louisiana and are not an issue of public concern. Rec. Doc. 12 at 10.

Plaintiffs' argument is unavailing because the context of the speech relates to a public issue and was made during a campaign for political office. *Id.* The United States Supreme Court has expressly held that such speech is protected by the First Amendment. *Eu*, 489 U.S. at 223. Additionally, the campaign mailers fall under the protection of Article 971 because congressional term limits raise issues that are matters of political concern to the community; and, the campaign mailers were written statements that were distributed to the public. Therefore, the speech in question is related to a public issue and was in furtherance of defendants right to free speech.

Because defendants met their burden in showing the speech was related to a public issue, the burden is shifted to plaintiffs, who must demonstrate a probability of success on their claim. *See Schittone*, 2018 WL 2078822 at *2. "The burden of proof on public official plaintiffs in defamation cases concerning their official conduct is indeed a very difficult one." *Davis v. Borskey*, 94-2399, p. 13 (La. 9/5/95), 660 So. 2d 17, 24. "If the plaintiff fails to demonstrate a probability of success, the trial court dismisses the claim." *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009).

"A cause of action for defamation arises out of La. C.C. art. 2315. Defamation involves the invasion of a person's interest in his or her reputation and good name." *Starr v. Boudreaux*, 2007-0652, p. 5 (La. App. 1st Cir. 12/21/07), 978 So. 2d 384, 389 (citing *Costello v. Hardy,* 03-1146, p. 12 (La. 1/21/04), 864 So. 2d 129, 139). To prevail in a defamation action, "a plaintiff must necessarily prove four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) a fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Fitzgerald v. Tucker,* 98-2313, p. 10 (La. 6/29/99), 737 So.2d 706, 715. "If any one of these required elements is lacking, plaintiff's cause of action fails." *Id.* (citing *Costello,* 864 So.2d at 140). "A non-movant's burden in opposing an Article 971 motion to strike is the same as that of a non-movant opposing summary judgment under Rule 56." *Block v. Tanenhaus*, 867 F.3d 585, 590 (5th Cir. 2017). Therefore, plaintiffs must show a genuine issue of material fact as to defamatory, falsity, fault and injury. *Id.*

First, plaintiffs must show that the mailers were defamatory. *Cangelosi v. Schwegmann Bros. Giant Super Markets,* 390 So. 2d 196, 198 (La. 1980). There are two categories of defamatory statements. *Markovich v. Villere*, 2017-1739, p. 12 (La. App. 1st Cir. 2/28/19), 273 So. 3d 333, 343, *writ denied*, 2019-0500 (La. 5/20/19), 271 So. 3d 201. Statements can be defamatory *per se* if the statements

"expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation." *Id.* "When a plaintiff proves publication of words that are defamatory *per se,* falsity and malice (or fault) are presumed, but may be rebutted by the defendant." *Id.*

Statements can also be defamatory "if the words, taken in context, tend to injure the person's reputation, to expose the person to public ridicule, to deter others from associating or dealing with the person, or to deprive the person of public confidence in his or her occupation." *Davis*, 660 So. 2d at 22. "The question for the court in determining whether words have a defamatory meaning is whether a third person hearing the communication, taken in context, as intended in a defamatory sense." *Id.* In this case, "a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault) and injury." *Markovich*, 273 So. 3d at 343. "In cases involving statements made about a public figure, where constitutional limitations are implicated, a plaintiff must prove actual malice, *i.e.,* that the defendant either knew the statement was false or acted with reckless disregard for the truth." *Costello*, 864 So. 2d at 140–41 (citing *Romero v. Thomson Newspapers Wisconsin, Inc.,* 94–1105, p. 5 (La. 1/17/95), 648 So. 2d 866, 869)).

The Louisiana Second Circuit has held that the word "thug" used when "referring to the opposing political campaign workers" was not defamatory per se. William E. Crawford, 12 La. Civ. L. Treatise, Tort Law 17:6 (2nd ed. 2020)(citing *Garrett v. Kneass*, 482 So. 2d 876 (La. Ct. App. 2d Cir. 1986)(concluding that the word thug "does not impute any particular crime to the plaintiff"). In contrast, the Louisiana Fifth Circuit held that a statement made about a cadet in the police academy using steroids was defamatory per se because "the friends of the cadet got the impression that the cadet was using steroids." *Id.* (citing *Fourcade v. City of Gretna*, 598 So.2d 415 (La. Ct App. 5th Cir. 1992)).

In *Costello*, the Louisiana Supreme Court held that statements made against an attorney were defamatory but not defamatory *per se*. *Costello*, 864 So. 2d at 141. The statement made was that the attorney's representation "fell below the standard of care of competent practitioners in his same field." *Id.* The court found that these statements allege negligence which "call into question" the defendant's "skill as an attorney" and therefore injure his professional reputation. *Id.* The court explained that this statement would not injure his professional reputation unless one considers the extrinsic facts. *Id.* Therefore, the statement is defamatory but not defamatory *per se*. *Id.* at 141-42. Plaintiffs argue that statements contained in the mailers ruined Blanchard's reputation and "deters others from

associating with her and/or voting for her." Rec. Doc. 12 at 14-
15. However, plaintiffs do not provide evidence that those who
received the mailers stopped associating with her or otherwise
interpreted the statements in a defamatory sense. *See* Rec. Doc. 1-
1 and 12. All statements contained therein pertained to Blanchard's
opposition to term limits and at no point alleged criminal conduct.
*See id.* at 10-16.

Instead, plaintiffs offer evidence demonstrating a 3% drop in
Blanchard's polling numbers after the mailers were distributed.
Rec. Doc. 12 at 17. Although this evidence may suggest a connection
between the mailers and Blanchard's electability, it does not prove
that the mailers "ruined her reputation as a politician." The
mailers did not allege that she was negligent nor do they allege
that she performed poorly at her job; rather the mailers simply
allege that Blanchard is against congressional term limits. *See*
Rec. Doc. 1-1. Therefore, it is unlikely that the statements were
defamatory *per se* or defamatory.

However, assuming *arguendo* that the statements are
defamatory, plaintiffs must prove falsity, fault and injury.
*Cangelosi,* 390 So. 2d at 198. Plaintiffs must prove that the
statements were false and may not recover if a defendant is able
to prove that the statements made were true. *Costello*, 864 So.2d
at 141. The Louisiana Supreme Court stated that "truth is a
defense, and it is sufficient if an allegedly libelous article is

11

substantially true: unimportant details need not be accurate." *Romero*, 648 So. 2d at 870.

In *Brown v. Times-Picayune, LLC*, the First Circuit held that statements made by the defendant that the defense attorney "deserts client midtrial" were false. 14-0160, p. 8 (La. App. 1st Cir. 11/3/14) 167 So.3d 665, 667-70. The court reasoned that this headline wrongfully implied that the attorney abandoned his client mid-trial and that "extreme negative connotations" resulted from using the word "desert." *Id.* at 669. The attorney's withdrawal from the case was to ensure the client received adequate representation because he had never performed as lead counsel nor had he handled juvenile sexual assault cases. *Id.* Therefore, the court concluded that the statement that the plaintiff "deserted" his client was inaccurate and false. *Id.*

In contrast, the Louisiana Supreme Court held that statements made about a doctor were substantially true. *Romero*, 648 So. 2d at 871. The statement made was that the hospital's high rate of Caesarean surgeries was attributed to a certain physician that "is nearing retirement and only attends longtime patients who have had previous children—the category of women most likely to have a Caesarean." *Id.* at 869. The reporter who wrote the statement stated that he interviewed an administrator at the hospital who said the physician had a "limited, semi-retired practice." *Id.* at 871. The court stated that while the reporter's comment was not precise, it

12

had "a reasonable basis" because of the administrator's statement made to the reporter. *Id.*

Plaintiffs allege that the mailers contain many false statements. Rec. Doc. 1-1 at 7-15. The first mailer contained three statements, including (1) Blanchard "refused to sign the pledge to support congressional term limits;" (2) Blanchard "does not care about term limits for Congress;" and (3) urging voters to tell Blanchard to stop opposing term limits. *Id.* at 7-8. The second mailer also included similar statements, such as urging voters to call Blanchard "and ask her why she opposes President Trump's effort on term limits." *Id.* at 10. It also included a statement that stated that it is "outrageous that [Blanchard] refuses to support term limits on Congress." Rec. Doc. 1-1 at 11. The third mailer also consisted of three statements, including Blanchard "does not care about term limits;" Blanchard refused to sign the U.S. Term Limits Pledge; and "stop opposing congressional term limits." Rec. Doc. 1-1 at 13. The fourth mailer included a similar statement which said Blanchard does not support term limits for Congress. *Id.* at 15.

Defendants maintain that the mailers' statements are true as they are based on emails exchanged between Blanchard and Tillman where she expressly declined to support defendants' stance on term limits. Rec. Doc. 11-1 at 8; Rec. Doc. 11-1 at 2.

Defendants' mailers collectively state that Blanchard is against term limits. *See* Rec. Doc. 1-1 at 7-15. While some of the statements in the mailers were exaggerated, there was truth behind the statements. Unlike the statement in *Brown*, which mischaracterized the defense attorney's decision to withdraw representation, the statements made in the mailers were based off statements made by Blanchard. Although she expressed that she had no objection to term limits, Blanchard choose not to support defendants' efforts. Blanchard's declination of support after numerous attempts by Tillman caused defendants to reasonably believe that she was against congressional term limits. Therefore, like *Romero*, defendants published statements from material collected by them that they reasonably believed to be true.

However, even if this Court finds that the statements were false, plaintiffs must prove that defendants published the mailers with actual malice. *Cangelosi,* 390 So. 2d at 198. "In order to recover damages for defamation under the *New York Times* Standard, a plaintiff who is a public official must establish by clear and convincing evidence that the defamatory statement was made with actual malice." *Davis*, 660 So. 2d at 23 (citing *New York Times*, 376 U.S. at 279-80). Actual malice is defined as knowledge that the statement was false or published the statement with "reckless disregard of whether it was false or not." *Id.* at 10. (citing *New York Times*, 376 U.S. at 279-80). "The public official must prove

that the defendant published the false statements with a high degree of awareness of its probable falsity," *id.* (citing *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)), or that "the defendant in fact entertained serious doubts as to the truth of the publication." *Id.* (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *Young v. Meyer*, 527 So. 2d 391, 392 (La. App. 4th Cir. 1988) (citing *St. Amant*, 390 U.S. at 731).

The Louisiana Fourth Circuit upheld a trial court's finding of actual malice. *Bruno v. Medley*, 20-0515, p. 17 (La. App. 4th Cir. 11/2/20), 2020 WL 6435795 at *8. The parties in this case were running for judicial election wherein the plaintiff created a television commercial that called the defendant a "deadbeat dad" who failed to pay child support for 13 years. *Id.* The plaintiff based her commercial off court records from the defendant's divorce. *Id.* at *7. The court records did not establish that the defendant failed to pay child support for 13 years. *Id.* Additionally, the plaintiff testified that the defendant did pay for the child's tuition and health care expenses which are considered child support. *Id.* From this, the district court concluded that the plaintiff acted with actual malice because she knew health care and tuition were child support payments and she

had no evidence of a judgment that he failed to pay child support payments. *Id.* at *8.

Additionally, in *Lamz,* the First Circuit held that the plaintiff could not prove the elements of a defamation claim, including actual malice. *Lamz*, 938 So. 2d at 798. The defendant stated in an affidavit that he "did not act with knowledge of or a reckless disregard of the truth." *Id.* at 797. The First Circuit stated that the evidence did not show that the plaintiff could support actual malice without further explanation. *Id.* at 798.

Plaintiffs argue that *Lamz* does not apply in this case because defendants knew that Blanchard did not oppose term limits based off the email exchange between Blanchard and Tillman. Rec. Doc. 12 at 15. Plaintiffs argue that the affidavit submitted by Nick Tomboulides, who is the Executive Director of U.S. Term Limits show that defendants had such knowledge. *Id.* Tomboulides's affidavit confirms that the mailers were based off the email exchange between Tillman and Blanchard. Rec. Doc. 11-2 at 2. However, it neither shows nor suggests that defendants acted with reckless disregard to the truth. *See id.*

Based on the same email conversation, defendants believed that Blanchard does not support term limits because she failed to sign their pledge. Rec. Doc. 11-1 at 8. The facts do not indicate that defendants doubted the truth of these statements nor do they indicate that defendants were aware that these statements were

16

false. In each email exchange with Tillman, Blanchard failed to give her support for congressional term limits. Rec. Doc. 11-2 at 2. This failure caused defendants to create and distribute mailers that conveyed what they earnestly believed to be Blanchard's lack of support. Because plaintiffs do not allege any other facts to establish malice, their defamation claim fails.

However, assuming *arguendo* that the statements were made with actual malice, plaintiffs must prove injury. *Cangelosi,* 390 So. 2d at 198. "The injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage such as loss of income is claimed." *Costello*, 864 So. 2d at 141 (citing *Kosmitis v. Bailey,* 28,585, p. 4 (La. App. 2nd Cir. 12/20/96), 685 So. 2d 1177, 1180). "Plaintiff must present competent evidence of the injuries suffered" and "that the defamatory statements were a substantial factor in causing the harm." *Id.* (*citing Taylor v. Town of Arcadia,* 519 So. 2d 303, 306 (La. App. 2d Cir.), *writ denied,* 522 So.2d 1097 (La. 1988)). However, "there is no need to establish the actual pecuniary value of the injury suffered." *Arnaud v. Dies*, 2016-642, p. 12 (La. App. 3rd Cir. 12/7/16), 208 So. 3d 1017, 1026.

Here, plaintiffs claim that they suffered the injury of losing the election. Rec. Doc. 12 at 17. Plaintiffs argue that these mailers caused injury to Blanchard because they diminished her

reputation. *Id.* Plaintiffs state that Blanchard won early voting by 51% and dropped to 48% in the polls after the mailers were distributed, suggesting that the mailers were a substantial factor in causing her harm. *Id.* Plaintiffs do not provide any other evidence to prove injury to Blanchard's reputation or to show how Blanchard and her committee suffered financially. *See* Rec. Doc. 12 at 16-17. Plaintiffs failed to provide sufficient corroborating evidence to show injury besides the fact that Blanchard dropped 3% in the polls after the mailers were distributed. *Id.*

For the reasons stated above, defendants' motion to strike is granted and reasonable attorney's fees are available pursuant to Louisiana Civil Procedure Article 971.[2] As such, plaintiffs' claims should be dismissed with prejudice.

### b. <u>Motion to Dismiss pursuant to Rule 12(b)(6)</u>

Upon dismissing the central defamation claim, it is unlikely that damages arising from plaintiffs' remaining claims will sustain diversity jurisdiction for failure to exceed the jurisdictional minimum. 28 U.S.C. § 1332. Plaintiffs' remaining claims are state election law violations and enrichment without cause. Rec. Doc. 1-1 at 11-20.

---

[2] Article 971(B) states that the prevailing party "shall be awarded reasonable attorney's fees and costs." La. Code Civ. Pro. art. 971(B).

Plaintiffs argue that defendants violated La. R.S. 18:1463(A), La. R.S. 18:1463(C)(1), and La. R.S. 18:1463(C)(2)(c). Rec. Doc. 1-1 at 17-18. La. R.S. 18:1463(F) states that "[w]hoever violates any provision of this Section shall be fined not more than two thousand dollars or be imprisoned, with or without hard labor, for not more than two years, or both." La. R.S. 18:1463(F) This means that plaintiffs' damages for violations of election law may not exceed $2,000 in damages. *Id.* Additionally, defendants state that only the district attorney can seek criminal penalties and imprisonment. Rec. Doc. 11-1 at 16. Therefore, it is unlikely that this claim has any monetary damages because the $2,000 fine is a criminal penalty. *See* La. R.S. 18:1463.

Plaintiffs also seek reasonable attorney fees in connection with their election law claim. However, a plaintiff may only collect attorney fees under La. R.S. 18:1463 if a permanent injunction is granted. *See* La. Stat. Ann. § 18:1463(D)(2). Plaintiffs state in their reply that they are not asking for injunctive relief because the election has already concluded. Rec. Doc. 12 at 19. Therefore, plaintiffs would not be entitled to attorney fees.

Last, plaintiffs claim damages for enrichment without cause. La. Civ. Code Art. 2298 states the amount of damages that a plaintiff may recover for enrichment without cause. It states that "[t]he amount of compensation due is measured by the extent to

which one has been enriched or the other has been impoverished, whichever is less. The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered." La. Civ. Code Art. 2298. "The root principle of unjust enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid." *Quaternary Res. Investigations, LLC v. Phillips*, 2018-1543, p. 11 (La. App. 1st Cir. 11/19/20)(citing *State By & Through Caldwell v. Fournier Industrie et Sante*, 2017-1552 (La. App. 1st Cir. 8/3/18), 256 So.3d 295, 303, *writ denied*, 2018-2065 (La. 4/8/19), 267 So. 3d 607). It is difficult to ascertain an amount of damages from the facts listed in plaintiffs' petition. Plaintiffs do not provide facts on how defendants received an economic benefit. *See* Rec. Doc. 1-1 and 12.

It appears that this claim is generally unsuccessful because it "cannot stand when a plaintiff has another remedy available to it, particularly a contractual remedy." *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 442 (5th Cir. 2014). Defendants argue that plaintiffs have another remedy available which is a copyright claim, but plaintiffs did not bring this cause of action against defendants. Rec. Doc. 1-1. Therefore, plaintiffs' unjust enrichment claim would not stand.

New Orleans, Louisiana this 31st day of March, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE